[No. F044749. Fifth Dist. Feb. 2, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY GEORGE BAKER, Defendant and Appellant.

COUNSEL

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, and Michael P. Farrell, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

WISEMAN, J.—  The theft of livestock is a serious economic problem that plagues many rural communities. In fact, it is relatively rare to see successful prosecutions of this type of crime, largely due to the isolation of most crime scenes and the fungible nature of the "goods." Here, the trust normally accorded to neighboring ranchers was violated when one neighbor failed to return his neighbors' cattle, keeping them as his own. We address how a trial court should go about calculating restitution for the theft of cattle, including whether it is appropriate to order restitution for calves that were likely born while the cows were misappropriated. In addition, we examine whether the court properly quadrupled the restitution amount under Food and

Agriculture Code section 21855 and conclude that it did. Consequently, the restitution award in the amount of $22,521 is affirmed.

## *FACTUAL AND PROCEDURAL HISTORIES*[1]

On November 4, 2003, a jury found Jerry George Baker (defendant) guilty of 11 counts of grand theft of lost property (Pen. Code, § 485), one count of altering a brand (Food & Agr. Code, § 17551, subd. (b)), and one count of forgery of a livestock market invoice (Pen. Code, § 470, subd. (d)).

On January 8, 2004, the trial court conducted a restitution hearing. The court began by noting that it had read the probation report prepared for defendant's sentencing, which indicated that three of the victims sought $25,500 in restitution. The prosecutor then elicited testimony from John Suther, an investigator for the state Bureau of Livestock Investigation (BLI), and three of the owners, Billy Wells, Patrick Atherton, and Christopher Lang of the Beresfords Corporation, whose cows were misappropriated by defendant. The other two owner-victims were John Rodgers of the Visalia Stockman's Market and Jorge Ramirez. They were unable to attend the restitution hearing.

Suther testified that he had prepared a document listing the potential restitution due to the victims. To determine this amount, Suther first consulted the Visalia Livestock Market and discovered that defendant had sold a number of calves each year for a certain price. Next, Suther determined how many cows were lost by each of the five victims in this case. After assuming that a lost cow would have had one calf each of the years it was missing, Suther estimated the value of those calves to be the average price per calf received by defendant that year and multiplied those totals by four, based upon the Food and Agriculture Code.

All three of the owner-victims testified that they had sold the cows after they had been recovered from defendant. Wells testified that, because it cost $180 to $200 per year to feed a cow, he would only have kept a cow if it had been producing a calf each year. Lang testified that there was evidence that each of his four cows had calves while they were missing. Tellingly, the cow that belonged to Atherton was pregnant when it was recovered.

---

[1] Because defendant does not contest the sufficiency of the evidence supporting his convictions, we summarize the evidence presented during his restitution hearing as only it is at issue in the appeal.

Following the testimony, the prosecutor gave the court a copy of the Food and Agriculture Code section providing that, "in any action involving the taking of cattle, recovery shall be four times the value of the animals." He asked the court to engage in a reasonable assumption that, while the cows were on defendant's property, he "reaped the fruit of every single calf produced by them." Had they not been producing, the prosecutor posited, defendant would have gotten rid of them due to the cost of feeding them. Defendant's counsel argued that there was no evidence to support the assumption that the cows had borne calves during the time they were missing.

After hearing the evidence, the court ruled that, based on a preponderance-of-the-evidence standard, the cattle were on defendant's property during the time period they were missing. In addition, the court found that it was reasonable to assume defendant only would have kept the cattle if they were producing calves, as there was no reason to keep and feed them otherwise. Relying on section 21855 of the Food and Agriculture Code, the court held that the four-times multiplier should only be applied to the first year that a cow was missing and not the years thereafter. The court also agreed to deduct $190 per year, per cow, for the cost of feed expended by defendant while the cows were on his property. After a recalculation of the restitution award was presented by the prosecutor and agreed to by defendant's counsel, the court ordered defendant to pay victim restitution in the amount of $22,521 as follows: to the Visalia Stockman's Market, $4,730; to the Beresfords Corporation, $9,635; to Jorge Ramirez, $4,078; to Billy Wells, $2,039; and to Pat Atherton, $2,039.

Following the restitution hearing, the court sentenced defendant to state prison for four years, however, suspended execution of the sentence and granted defendant probation conditioned on his service of one year in jail and his payment of victim restitution at a rate of $550 per month.

## *DISCUSSION*

■ "The standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132 [123 Cal.Rptr.2d 316].)

## I. *Propriety of restitution order when property is returned*

Defendant contends the court improperly ordered him to pay restitution because all of the cattle were returned to their owners, who later sold them. Relying on *People v. Rivera* (1989) 212 Cal.App.3d 1153 [261 Cal.Rptr. 93], defendant argues that the law requires the amount of restitution to be based upon the victims having suffered economic loss, and no loss exists when the owner recovers the stolen property. Defendant's reliance on *Rivera*, however, is misplaced. In that case, the court held that where a burglary victim's property, which was the subject of the defendant's conviction for receiving stolen property, had been returned, the court erred in awarding restitution for items taken in the burglary which were not found in the defendant's possession. (*Id.* at pp. 1161–1162.)

In contrast, here there is evidence demonstrating that the owner-victims did not receive the "same" cattle back from defendant; rather, the cows had likely been repeatedly bred and were two or three years older, depending on the date they went missing. Also, unlike *Rivera*, there is evidence that defendant was responsible for the actual losses suffered by the victims. He was found guilty of these crimes by the jury, and these cattle were found on his property in his possession. For these reasons, defendant's analogy to *Rivera* is incorrect.

Additionally, direct victims of crime have a statutory right to restitution on the full amount of their losses without regard to the full or partial recoupment from other sources (except the state Restitution Fund). (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1272–1273 [91 Cal.Rptr.2d 128]; see also Pen. Code, § 1202.4, subd. (f) & (f)(3) [use of phrases "full restitution," "fully reimburse," and "every determined economic loss" requires expansive construction permitting victim to recover *all* determined economic losses].) Therefore, the fact that the owner-victims sold the cows upon their return does not affect the amount of restitution that may be imposed by the court.

## II. *Sufficiency of the evidence regarding the birth of calves*

Defendant also asserts that there is no substantial evidence to support the court's award of restitution based on the assumption that the cows bore calves each year they were missing from the owner-victims. We reject this contention.

In reviewing the sufficiency of the evidence, the " 'power of the appellate court begins and ends with a determination as to whether there is

any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." (*Estate of Leslie* (1984) 37 Cal.3d 186, 201 [207 Cal.Rptr. 561, 689 P.2d 133], quoting *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427 [45 P.2d 183], and *Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660 [190 Cal.Rptr. 355, 660 P.2d 813].) Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. (*People v. Baumann* (1985) 176 Cal.App.3d 67, 80 [222 Cal.Rptr. 32].) "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139 [17 Cal.Rptr.2d 375, 847 P.2d 55].) We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. (*People v. Perry* (1972) 7 Cal.3d 756, 785 [103 Cal.Rptr. 161, 499 P.2d 129], disapproved on other grounds in *People v. Green* (1980) 27 Cal.3d 1, 28 [164 Cal.Rptr. 1, 609 P.2d 468].)

The trial court heard evidence (both during the trial and the restitution hearing) that the owner-victims expected each of the cows to produce calves every year—that is why they purchased the cows and what gave them their primary value. In addition, the court heard testimony that the cows appeared to have produced calves during the time they were in defendant's possession. Upon hearing this testimony, the court properly reasoned that defendant's boarding the cows on his property and feeding them over the years was significant evidence that they were regularly producing calves; otherwise, given the annual cost of feed, he would have had no reason to keep the cattle.

Defendant contends that because the owner-victims admitted they had no personal knowledge as to whether the cows bore calves, it was error for the court to make such an assumption. However, the lack of personal knowledge was not due to any fault by the owner-victims; rather, it was defendant's misappropriation of the cows that led to their inability to conclusively determine whether calves had been born during the time they were missing.

In sum, we conclude there was substantial evidence before the court to determine, by a preponderance of the evidence, that the misappropriated cattle bore calves each year while they were in defendant's possession.

III. *Quadrupling restitution pursuant to Food and Agriculture Code section 21855*

Defendant's final contention is that the trial court erred in quadrupling the amount of restitution based upon Food and Agriculture Code section 21855

on the basis that this code section is inapplicable in criminal cases. We disagree for the following reasons.

■ First, a review of the language of section 21855 reveals that it *is* applicable in a criminal case: "Notwithstanding any other provision of law, *in any action* for the wrongful taking [or] possessing . . . of cattle, . . . the detriment caused thereby to the plaintiff shall be four times the value of the cattle at the time of the taking, . . . with interest from that time, plus an amount in fair compensation for the time and money properly expended by the plaintiff in pursuit of the cattle." (Italics added.) The key phrase of this code section is "in any action." An action is defined as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22; see also Code Civ. Proc., § 24 [defining actions to be of two kinds, criminal or civil].) By using this language, the Legislature did not intend to limit the applicability of this section only to civil actions. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297] [where the language of a statute is unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history].)

■ Second, the court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole. (*People v. Ortiz* (1997) 53 Cal.App.4th 791, 800 [62 Cal.Rptr.2d 66]; see also Pen. Code, § 1202.4.) In *People v. Hove, supra,* 76 Cal.App.4th at page 1275, the court emphasized the following: " ' " ' . . . [S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.' [Citation.]" [Citation.] [¶] This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.]' "

Here, the court heard and weighed all of the evidence and determined that it was proper to apply section 21855 of the Food and Agriculture Code in calculating the amount of restitution. Further, it chose to quadruple the restitution amount only for the value of the cattle during the first year they were missing and on defendant's property. This decision was well within the trial court's discretion.

## *DISPOSITION*

The restitution order in the amount of $22,521 is affirmed.

Dibiaso, Acting P. J., and Buckley, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 13, 2005. Kennard, J., was of the opinion that the petition should be granted.