Filed 6/27/16  P. v. Smith CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>JEFFREY MONTGOMERY SMITH,<br><br>      Defendant and Appellant. | C080394<br><br>(Super. Ct. No. MC RD CRF 140002803) |

Defendant pleaded no contest to unlawfully causing a fire to burn a structure or forest land (Pen. Code, § 452, subd. (c)),[1] obstructing a peace officer (§ 148, subd. (a)(1)), and unlawfully discharging a firearm in violation of Shasta County Code section 9.10.030; the trial court placed him on informal probation for three years.  The court also awarded victim restitution in the amount of $2,274,816.80.

---

[1] Further undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends the trial court's restitution order was inadequate and conclusory, such that it was an abuse of discretion. He challenges the five percent reduction in the award for the victims' comparative negligence, and concludes that the restitution order is not supported by substantial evidence. We disagree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In August 2013, defendant discharged a firearm causing a fire to burn forest land located in Redding. The burned land included property owned by Gary and Erica Buxa. The fire burned most of the Buxas' seven-acre property and some of their personal property but not their house.

The trial court considered extensive written briefing from the parties on the issue of restitution and also held an evidentiary hearing. At the hearing, multiple witnesses testified and the parties submitted evidence. The People submitted photographs of the fire damage as well as a detailed list of the Buxas' property that was damaged by the fire and the replacement value of that property. Gary Buxa testified that 90 to 95 percent of his property was affected by the fire. He specifically testified that "as a result of the fire" there was "extensive" damage and destruction to his property, and presented a detailed list of items--including many different kinds of plants and trees--which were damaged in the fire. This list was moved into evidence and accepted by the trial court with no objection by the defense. The list included a total of 758 oak trees, listed separately by location--147 in the backyard, 26 in the front yard, and a total of 585 oaks from five separate areas ("sectors" A through E) from the property outside the deer fence. The list of items included their valuation; Erica Buxa testified that the value of the damaged property was determined based on receipts and Internet research.

At issue here is the numerical estimate as well as the replacement value of the 758 oak trees. The Buxas valued the replacement of these trees at $3,000 per tree for a tree 15 to 20 feet tall. Gary Buxa testified that oak trees in the 15 to 20 foot range were the largest locally available oak trees. He explained that it would have cost $20,000 or

2

$30,000 per tree to replace the large full size oak trees damaged by the fire, and it was unclear whether such trees were locally available. He testified that an arborist, Kevin Baldwin, had helped him count the trees and determine how many would survive. Buxa also testified that the property was firescaped (creating non-burn zones around a home).

Baldwin prepared a declaration, which was submitted to the trial court as an attachment to the People's "brief regarding restitution issues," attesting that he is the owner and operator of a tree trimming and tree removal business in Shasta County, and that one of his specialties is identifying unhealthy or dead trees. Baldwin assisted Buxa in counting the trees, and specifically declared that he had counted oak trees in sectors A, B, C, and D. His count of the trees in these four sectors matched the numbers for those four sectors submitted by the Buxas on their list--547. According to Baldwin, fewer than five percent of the trees on the Buxas' property would remain alive and healthy after the fire. Buxta testified at the hearing as to Baldwin's representations, on both direct and cross examination, without any objection.

Defendant presented the testimony of James Wilson, a retired forester for the Department of Forestry and Fire Protection. Wilson testified that a nursery in Southern California sold smaller (10 to 12 foot) blue oak trees for $89.99 each. Wilson offered no evidence regarding how much it would cost to replace the damaged trees with the trees from Southern California. Wilson described firescaping but did not give an opinion as to the adequacy of the firescaping on the Buxtas' property. Defendant testified broadly that the Buxas' property was not adequately firescaped.

The trial court issued a written order awarding the Buxas $2,274,816.80, representing the $2,394,544 in restitution they requested, minus a five percent offset for their comparative negligence. The trial court wrote that the evidence submitted by the People supported the restitution requested by the Buxas.

Defendant filed a timely notice of appeal.

3

## DISCUSSION

The California Constitution provides that crime victims have a right to restitution when they suffer losses as a result of criminal activity. (Cal. Const., art. I, § 28, subd. (b); see *People v. Giordano* (2007) 42 Cal.4th 644, 652 (*Giordano*).) This constitutional mandate is implemented by section 1202.4. (See *Giordano,* at p. 656.)

Section 1202.4 provides, in relevant part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record. . . ." (§ 1202.4, subd. (f).) "To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3).) "The value of . . . damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A).)

"[W]e review the trial court's restitution order for abuse of discretion. [Citation.] The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.] '[I]t asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [Citation.] Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the . . . victim's economic loss. To facilitate appellate review of the trial court's

4

restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*Giordano, supra,* 42 Cal.4th at pp. 663-664.)

The standard of proof at a restitution hearing is preponderance of the evidence. (See *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) The trial court may accept, as prima facie evidence of loss, a property owner's statement about the value of damaged property. (*Id.* at p. 1543.) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*Ibid*.)

"In reviewing the sufficiency of the evidence, the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citation.] . . . 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citation.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469.)

On appeal, defendant contends the trial court's restitution order was an abuse of discretion, lacking specificity and detail for the award itself as well as for the five percent reduction in the award. He concludes that the restitution order is not supported by substantial evidence.[2]

---

[2]  To the extent that the reply brief raises issues not headed and argued in the opening brief, we decline to consider them. (See *Utz v. Aureguy* (1952) 109 Cal.App.2d 803, 808.)

We first conclude the trial court did not abuse its discretion. On this record, the trial court's determination of economic loss was reasonable and produced a rational result. (See *Giordano, supra*, 42 Cal.4th at p. 665; see also *People v. Baker, supra,* 126 Cal.App.4th at p. 467 [no abuse of discretion where there is a "factual and rational basis for the amount of restitution ordered by the trial court"].) The evidence--set forth in detail *ante*--was more than sufficient to make a prima facie showing of the economic losses suffered by the Buxas as a result of the fire, and defendant's largely irrelevant offering in response failed to adequately challenge, let alone disprove, the amount of the losses claimed by the Buxas.[3]

We next reject defendant's contention that the trial court failed to adequately explain how it calculated the restitution award as well as the reduction. The court's written order clearly states that the evidence submitted by the People supported the amounts of restitution requested, and it did. The evidence presented at the hearing regarding loss amounts and replacement values was specific and detailed. The expert declaration regarding the count of the oak trees in specified areas as well as the cause of their damage and death was consistent with the Buxtas' claims of damage and loss. The court's implicit rejection of the evidence of the purchase price only of non-comparable trees offered by defendant did not constitute an abuse of discretion. No alternative method of calculating loss--such as the appraised value of a comparable property--was offered by defendant. The witnesses for each side merely disagreed as to the value of the

---

[3] To the extent that defendant argues on appeal that the expert's conclusions were flawed, the time to raise this challenge was in the trial court. (See *People v. Weaver* (2001) 26 Cal.4th 876, 904 ["To the extent defendant attempts to impugn the validity of the appointed experts' conclusions . . . , the time to raise such a challenge has long since passed. . . . [D]efendant may not now relitigate that question with arguments he did not make below"]; *People v. Bolin* (1998) 18 Cal.4th 297, 321 [defendant's contention that evidence was inadmissible "because the witness was not qualified to render an expert opinion" was forfeited for lack of objection in the trial court].)

damaged trees and the extent of the firescaping.  The trial court was entitled to select the Buxtas' more complete assessment of price per replacement oak tree over the fragmented version offered by defendant.

Although defendant claims the five percent *reduction* was unsupported as well, he does not claim that he was entitled to a *greater* reduction, much less point to any evidence in the record that would support that claim.  He concludes without citation to the record that "the resulting damage could have been far less ha[d] the victims maintained at least 100 feet of defensible space."  No *evidence* supports this claim.  The only evidence at the hearing relevant to firescaping was Gary Buxa's testimony that the property was properly firescaped and defendant's testimony that it was not.  The trial court was permitted to credit one witness's testimony over another if it so chose, and it did not need to do so explicitly.

In any event, to the extent that the reduction as given was not specifically supported by the evidence presented at the hearing, any error was in defendant's favor as it resulted in his owing *less* restitution than the amounts presented by the People, supported by the victims' calculations and submissions, and largely unchallenged (much less disproved) by defendant.

## DISPOSITION

The restitution order is affirmed.

/s/
Duarte, J.

We concur:

/s/
Robie, Acting P. J.

/s/
Mauro, J.

8