Filed 11/10/21  P. v. Johnson CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br>v.<br><br>CHARLES MICHAEL JOHNSON,<br><br>Defendant and Appellant. | A161620<br><br>(Napa County<br>Super. Ct. No. 19CR002795) |

Defendant Charles Michael Johnson appeals several monetary elements of the sentence imposed after he pled no contest to three felonies. He challenges the amount of a victim restitution award on several grounds, and challenges a restitution fine of $300, a $120 court security fee, and a $90 criminal conviction assessment on the ground that he is unable to pay them. We perceive no error and shall affirm the awards.

### Factual and Procedural History

Defendant was 25 years of age at sentencing. He was discovered burglarizing cars in a motel parking lot and led the police on a high-speed chase in a stolen car, which ended when the car crashed through a fence on the property of Crown Hill Materials (Crown Hill), damaging pallets of building materials. The district attorney charged him with seven felonies and four misdemeanors committed while released on bail and having a prior conviction that constituted a prior strike and a serious felony. After reaching

1

a plea agreement, defendant pled no contest to second degree car burglary (Pen. Code,[1] §§ 459, 460, subd. (b)), assault by means likely to cause great bodily harm (§ 245, subd. (c)), and evading a peace officer in a motor vehicle (Veh. Code, § 2800.2, subd. (a))). He admitted the on-bail enhancement (§ 12022.1) and prior strike (§ 667, subd. (a)(1)). The remaining charges were dismissed and a 10-year prison sentence imposed. As part of the agreement, defendant waived his right to appeal.

In June 2020, the probation office filed a report stating that Crown Hill claimed $11,721 in restitution, while two other victims claimed an additional $568.[2] In July 2020, the court sentenced defendant to the agreed-upon 10 years in prison, with credit for 573 days served. The court also imposed a $120 court security fee (§ 1465.8), a $90 criminal conviction assessment (Gov. Code, § 70373), a restitution fine in the statutory minimum amount of $300 (§ 1202.4, subd. (b)), and a stayed parole-revocation fine in the same amount (§ 1202.45). It ordered victim restitution in the total amount of $12,289 as set forth in the probation report, but set a restitution hearing to enable defendant to challenge the amount due to Crown Hill. The court advised defendant that he retained the right to appeal any "sentencing or structural errors."

The court ultimately held the restitution hearing on December 8, 2020. Defendant waived his right to appear. The lone witness was District Attorney's Office investigator Nick Conrad, who authenticated copies of three documents Crown Hill had given him to substantiate its claim. Two of the

---

[1] All undesignated statutory references are to the Penal Code.

[2] The City of Vallejo claimed $208 for damage to a sign, and the owner of one of the cars claimed $361 for his broken window. The court made awards accordingly that are not challenged on appeal.

documents concerned fence repair and site cleanup in the amounts of $2,270 and $1,560. Defendant conceded that those sums are recoverable. The third document was a "sales receipt" from Crown Hill for the value of materials—described as "Geowalls" of various sizes and colors—damaged in the crash. The receipt has line items for four types of Geowall with a quantity, unit price, and total price for each, totaling $4,423; a line item for a $216 "pallet deposit"; a line listing local sales tax of $370; and a line for the total of $5,009. The documents thus supported a total claim of $8,839 instead of the $11,721 set forth in the probation report.

After Conrad's brief authenticating testimony, defendant's attorney advised the court that he had not seen the documents before that day. However, he did not object on this basis to the admission of the documents or request a continuance of the hearing. The court allowed defense counsel to cross-examine Conrad, who testified that he had "asked [Crown Hill] to provide [him] with any proof of their loss" but "didn't go line per line with them on what meant what." The cross-examination about the receipt was, in its entirety, as follows: "Q. And what about People's [exhibit #] 2, that $5,009? What is that amount? [¶] A. This appears to be the building materials owned by the company that were destroyed [by] the wreck. [¶] Q. . . . [D]id anyone tell you how it was that all of those came to be destroyed? [¶] A. No. I didn't discuss that with them. [¶] Q. Do you know if any of those materials were reused by the construction company? [¶] A. I do not know."

Defendant's attorney offered no evidence but argued that the court should disallow the $5,009 because neither the document nor Conrad offered proof "that those building supplies were actually a loss for the business." While acknowledging that estimates and hearsay are admissible in a restitution hearing, the attorney asserted that the damaged materials might

have been reused, and argued that the evidence did not establish that every item on the receipt was so damaged that it had no salvage value.

The court acknowledged that, in order "to attack the specific amounts" of restitution sought, the defense "has a right to subpoena and ask further questions as to what some of those items are," which it had been unable to do because it first received the supporting documents that day. The court nonetheless ruled that, while it would reduce the award to Crown Hill from the $11,721 ordered at the sentencing hearing to the $8,839 supported by Crown Hill's documentation, it would not remove the $5,009 for materials listed in the "receipt." But it added, "I do think you [the defense] still have the right to reach out to the [victim] if you have additional questions. I don't know if there is anything that precludes [defense counsel from] bring[ing] it back if he is able to contact Crown Materials and they indicate 'well, some of these items were salvaged.' I would certainly take another look at it at that point." Later, the court reiterated, "Again, I am not precluding the defense, now that they have the documentation in front of them, to bring this matter back."

The record does not reflect any subsequent request to have the matter rescheduled for a further hearing. Rather, on December 14, 2020—six days after the restitution hearing—defendant filed a timely notice of appeal.

## Discussion

1. *The victim restitution award must be upheld.*

A criminal restitution award must be "sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct," including "payment for the value of stolen or damaged property," which may be measured by the property's replacement

cost or the cost to repair it. (§ 1202.4, subds. (f)(3) & (f)(3)(A).) A restitution award may also include lost profits. (*Id.*, subd. (f)(3)(E).)

Once a victim "makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.) Courts construe the right to restitution "broadly and liberally." (*People v. Baker* (2005) 126 Cal.App.4th 463, 467.) We review a victim-restitution order for abuse of discretion (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498), affirming if we find "a factual and rational basis for the amount of restitution ordered." (*In re Alexander A.* (2011) 192 Cal.App.4th 847, 857.)

Defendant contends the court denied him due process, that no substantial evidence supports the amount awarded, and that including an amount for sales tax was improper. His contentions all fail.

a. *The court did not deny defendant due process.*

Defendant contends the restitution hearing was conducted arbitrarily and lacked fundamental fairness. He notes that a restitution order "may not be based merely upon the trial court's subjective belief regarding appropriate compensation; there must be a factual and rational basis for the amount ordered and the defendant must be permitted to dispute the amount or manner in which restitution is to be made." (*People v. Carbajal* (1998) 10 Cal.4th 1114, 1125.) Nonetheless, a defendant's due process rights at such a hearing are "very limited" in scope, and are satisfied if " ' "the probation report gives notice of the amount of restitution claimed . . . , and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing." ' " (*People v. Cain* (2000) 82 Cal.App.4th 81, 86.)

5

The right to "challenge the figures" does not encompass a right to cross-examine the victim. (*Id.* at p. 86.)

In this case the probation report informed defendant in June that Crown Hill claimed that its losses totaled $11,721. Defendant was thus on notice of the size of the claim and had months to investigate it. The documentation offered in December did not increase the size of the claim, but reduced it. While his counsel did not receive a copy of the documentation until the hearing date, he did not request a continuance or object to the documents' admission. More importantly, the trial court gave defendant the opportunity to bring the matter back before the court if he found any evidence that any of the damaged materials were salvageable, or had been salvaged. Defendant's only response to this point is to assert that "[t]he fact that a busy public defender does not 'bring the matter back,' should not deprive appellant of his rights, particularly as he was in prison and not present at the hearing." But the court did not deprive defendant of his rights. It was defendant's burden to disprove the prima facie showing of the amount of loss. Defendant had several months to investigate the basis of the claim after he received notice of the amount sought. By exercising its discretion to allow his attorney to cross-examine Conrad at the hearing, and to investigate the matter afterward and request a further hearing if evidence emerged to justify one, the court gave defendant ample opportunity to "challenge the figures" in the victim's documentation.

b. *Substantial evidence supports the amount of the award.*

Defendant contends that because no employee of Crown Hill testified and Conrad did not know whether Crown Hill had been able to salvage or reuse any of the materials enumerated on the receipt, "there was no proof at all 'that these materials weren't used again.' " We disagree. Conrad testified

6

that he contacted Crown Hill to get "documents to prove their loss," and that it provided him the receipt. It is a reasonable inference that the dollar figures given for the listed materials represent Crown Hill's loss—that is, the retail value of materials lost as a result of the accident. The court did not abuse its discretion in drawing that inference—particularly given that it afforded defendant a chance to investigate the matter and have a further hearing if warranted.

Defendant also contends that it was improper to award the retail value of the damaged goods, citing *People v. Chappelone* (2010) 183 Cal.App.4th 1159. But the unusual facts of that case are readily distinguishable. In *Chappelone*, our colleagues in Division Two reversed an award of restitution to Target Corporation after one of its employees stole large amounts of damaged or defective goods that had been removed from the sales floor for possible return to the manufacturer or charitable donation. (*Id.* at pp. 1163–1167.) For most of the items, there was no possibility that they would be sold for their original retail prices. (*Id.* at pp. 1168–1169.) Awarding restitution based on those retail prices thus gave Target a windfall. (*Id.* at pp. 1173–1177.)

Defendant here points to no evidence that the goods he damaged were already unsaleable or that, but for his criminal conduct, they would not have been sold for their usual retail prices. The restitution award based on those retail prices properly reflects the sum of the goods' replacement cost to Crown Hill (§ 1202.4, subd. (f)(3)(A)) plus Crown Hill's lost profits on the sale of those goods (*id.*, subd. (f)(3)(E)).

        c. *Including sales tax in the award was not erroneous.*

Noting that the receipt includes $370 for "sales tax," defendant observes that, because Crown Hill would have transmitted that sum to the relevant taxing entity had it sold the goods, the amount does not represent an

7

economic loss to it. The Attorney General responds that defendant forfeited this objection by not raising it below and adds, on the merits, that there is " 'no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor . . . reflect the amount of damages that might be recoverable in a civil action.' " (*People v. Alexander A., supra*, 192 Cal.App.4th at p. 855.)

That principle is irrelevant here. This is not a situation in which the trial court was required to make a reasonable estimate subject to unavoidable imprecision: the sales prices of the goods, and thus the tax, were calculated with certainty. However, since the award includes the markup on the cost of the materials, the obligation to collect and pay the sales tax should be no less than if the materials had been sold in the normal course. We presume that the trial court included the sales tax of $370 in the restitution award on the assumption that Crown Hill will forward that sum to the taxing authority, if and when defendant satisfies the full amount of the award. There is no reason to assume that Crown Hill will fail to remit the tax as it should, so its inclusion does not give Crown Hill a windfall.

2. *Defendant waived his right to appeal the restitution fine.*

Defendant waived his right to appeal the imposition of a restitution fine in the statutory minimum amount of $300 following a felony conviction (§ 1202.4, subd. (b)(1)) because his plea agreement provided for the imposition of such a fine and included a waiver of his right to appeal. A paragraph of the agreement initialed by defendant states, "I understand that I will be ordered to pay a restitution fine. The fine is . . . $300 to $10,000 for one or more felonies . . . ." Elsewhere in the agreement, "waive appeal" is handwritten by the typewritten text of two paragraphs, "Plea Bargain" and "Appeal," both of which defendant initialed. In addition, his lawyer signed a statement that he

8

had gone over the form with defendant, explained the consequences of the plea, and "join[s] in the waivers."

To avoid the conclusion that he thereby waived his right to appeal the restitution fine, defendant notes that the court did not fulfill its obligation to advise him, before accepting his plea, that its direct consequences would include a restitution fine. (See *People v. Villalobos* (2012) 54 Cal.4th 177, 183.) But defendant disavows any challenge to the validity of his plea and, in any event, a defendant forfeits an advisement error if, like defendant, he does not object to the term at or before sentencing. (*Id.* at p. 182.)

Defendant also asserts that "the purpose of the plea . . . was to impose a specific prison sentence[,] and appellant waived his right to appeal on that issue . . . [but not] his right to appeal a subsequently imposed fine." But as defendant notes, a plea agreement is a form of contract to be interpreted in accord with the parties' mutually expressed intent. (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) Defendant points to nothing in the agreement limiting the scope of the appellate waiver to the duration of his prison sentence. The court imposed the statutory minimum of $300, which the agreement unequivocally set forth as a minimum amount that would be imposed. Even if the agreement had been silent about a restitution fine and the court had imposed a fine above that minimum, such a fine still would be permissible. (See *People v. Villalobos*, *supra*, 54 Cal.4th at p. 183 [plea agreement's silence about issue of restitution fine does not deprive court of discretion to impose fine in amount exceeding statutory minimum].)

3. *Any error in imposing the assessments is both forfeited and harmless.*

Defendant contends that the trial court violated his rights under the due process and/or excessive fines clauses of the state and federal constitutions when, without assessing his ability to pay, it imposed a

9

$120 court security fee (§ 1465.8) and a $90 criminal conviction assessment (Gov. Code, § 70373). Defendant forfeited any such objection. The court imposed the assessments 18 months after the Second Appellate District raised the ability-to-pay issue to constitutional prominence with its January 2019 opinion in *People v. Dueñas* (2019) 30 Cal.App.5th 1157, and eight months after the California Supreme Court granted review to address the question, "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments?" (*People v. Kopp,* S257844, Supreme Court Mins., Nov. 13, 2019 [254 Cal.Rptr.3d 637, 451 P.3d 776].)[3] Yet defendant did not object to the assessments based on inability to pay. While this court has rejected forfeiture arguments in prior appeals involving sentencing hearings that preceded *Dueñas* (see, e.g., *People v Johnson* (2019) 35 Cal.App.5th 134, 137–138), defendant identifies no reason to excuse such a forfeiture here.[4]

Defendant contends in the alternative that his trial lawyer's failure to object constituted ineffective assistance. However, to prevail on this ground he must show that counsel's failure, if deficient, caused him prejudice—that is, that the "decision reached would reasonably likely have been different

---

[3] Defendant's request for judicial notice of the Attorney General's brief to the California Supreme Court in *People v. Kopp, supra,* No. S257844, is denied as unnecessary, as the Attorney General has taken the same position in this litigation that defendant seeks judicial notice to establish that he took in *Kopp.*

[4] Defendant briefly asserts that because the court struck a $182 jail-booking fee based on inability to pay, it would have been futile to object to these assessments. To the contrary, the fact that the court struck other fees for this reason indicates that the court was open to consideration of this ground.

absent the errors." (*Strickland v. Washington* (1984) 466 U.S. 668, 696.) Defendant has not done so.

Initially, defendant has not addressed whether the assessments were excessive under the four-factor test for evaluating claims based on the constitutional Excessive Fines clause, which this court held controlling in this context in *People v. Cowan* (2020) 47 Cal.App.5th 32, review granted June 17, 2020, No. S261952. Nor has he established an inability to pay, as *Dueñas* held controlling as a matter of due process. (*People v. Dueñas, supra*, 30 Cal.App.5th at p. 1164.) In evaluating ability to pay (whether for Due Process purposes or as one of the Excessive Fines factors), the court must consider the defendant's present and future ability, including prison wages. (*Cowan, supra*, at p. 49.) In *People v. Johnson, supra*, 35 Cal.App.5th 134, this court held that it had been harmless beyond a reasonable doubt to fail to conduct an ability-to-pay hearing before imposing $370 in fines and assessments on an able-bodied defendant facing an eight-year prison term, as he would have "ample time to pay [the $370] from a readily available source of income while incarcerated." (*Id.* at p. 140.) In the present case, defendant was 25 years old at sentencing and had a GED and a "chainsaw certificate" from a Regional Conservation Corps. He had held two jobs and was in the hiring process for a third when he committed his crimes. As in *Johnson*, it is not plausible that he will be unable to earn enough funds to pay $210 while serving a 10-year prison sentence and during what should be several decades of productive working life thereafter.

4. *The abstract of judgment must be corrected.*

The parties agree that the abstract of judgment, as issued in July 2020, must be corrected to reflect the lesser amount of restitution to Crown Hill

ordered at the December 2020 hearing. Accordingly, the abstract must be amended to state a total restitution obligation of $9,407.74.

## Disposition

The matter is remanded with directions to correct the abstract of judgment to state the total amount of victim restitution awarded as $9,407.74. Subject to that correction, the judgment is affirmed.

POLLAK, P. J.

WE CONCUR:

BROWN, J.
ROSS, J.[*]

---

[*] Judge of the Superior Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.