Filed 1/20/23 In re A.H. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.H.,<br><br>    Defendant and Appellant. | A164645<br><br>(Contra Costa County<br>Super. Ct. No. J21-00207) |

Following minor A.H.'s admission to sexual battery by restraint against minor D.G., the juvenile court ordered the following restitution: $2,340 for counseling; $165 for seized clothing; $200 for a deposit on a service dog; and $4,550 for softball lessons. On appeal, A.H. contends that the court abused its discretion in ordering restitution for the service dog deposit and softball lessons. We disagree and affirm.

## BACKGROUND

In May 2021, the Contra Costa County District Attorney filed a juvenile court wardship petition (Welf. & Inst. Code, § 602)[1] alleging A.H. had

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

committed forcible rape (Pen. Code, § 261, subd. (a)(2)) and sexual battery by restraint (Pen. Code, § 243.4, subd. (a)).

According to the probation officer's report, on April 23, 2021, A.H. met D.G. after her softball practice. They " 'kissed a few times' " while sitting in one of the dugouts. It started to get cold, so they went inside a nearby equipment shed. A.H. indicated that he wanted to put his penis in D.G.'s mouth. D.G. " 'kept saying no' " and told A.H. to stop, but A.H. continued his advances. D.G. got up to leave and A.H. grabbed her arm, pulled her back, and asked her again. D.G. replied " 'No' " several times. D.G. tried to leave again, but A.H. pulled her back and pushed her against a wall. A.H. pulled down D.G.'s pants as she pushed him and said " 'No,' " then inserted his penis into her vagina. A.H. put his penis into D.G.'s mouth and ejaculated. D.G. subsequently disclosed the incident to several of her friends, who urged her to confront A.H. and tell school administrators. On April 27, 2021, D.G. and her friends confronted A.H. and, unbeknownst to A.H., recorded the conversation on D.G.'s cell phone. During that conversation, A.H. stated that he " 'shouldn't have done what [he] did,' " he " 'should've just stopped,' " that D.G. " 'kept saying no, but it was an iffy no,' " and that he was " 'sorry for what [he] did.' "

On June 28, 2021, pursuant to a negotiated disposition, A.H. admitted to committing sexual battery by restraint. The forcible rape allegation was dismissed. The juvenile court adjudged A.H. a ward of the court and imposed probation with in-home placement. The prosecution submitted a request for direct victim restitution that included losses for counseling, clothing from the day of the offense seized by police, softball retraining lessons, and a deposit for a service dog.

A contested restitution hearing was held on January 11, 2022. D.G.'s mother was the only witness who testified at this hearing. She testified that D.G. had played year-round softball for 11 years and planned to play Division One softball in college as a catcher. Shortly after the incident, D.G. had a panic attack and had to leave a softball tournament. D.G. was unable to be in close proximity to strangers, and could not be near the male umpire behind her at home plate. To help her overcome this, D.G. took extended one-on-one lessons with her softball coach. D.G. had taken 30-minute hitting lessons prior to this incident, but the new lessons were "very basic elementary type lessons" lasting 60 to 90 minutes to get D.G. back to her previous skill and comfort level. The coach would, for example, practice techniques D.G. had learned from mental health counseling when she started to feel panicked or upset. D.G. had taken 35 of these extended lessons, and D.G.'s mother had paid $130 for each lesson.

D.G.'s mother had also paid a $200 deposit to a breeder for a "service dog." The labradoodle was to be born the next month. According to D.G.'s mother, a service dog was recommended by D.G.'s counselor to help D.G. "feel[] protected." If D.G. was going for a walk, she could take the dog with her. D.G.'s mother reported that D.G. had "had nightmares for months and months," and "having the service dog" on a "hard night . . . could be very calming."

The juvenile court ordered the following restitution for D.G. through her mother: $2,340 for counseling; $165 for seized clothing; $200 for the service dog deposit; and $4,550 for softball lessons. As for the service dog deposit, the court explained: "The testimony, as it came in, was that the service dog was part of the counseling as an emotional support dog, as part of a coping mechanism. And the fact that it may have ancillary benefits beyond

3

its utility as an emotional support dog, doesn't take it out of a category of such a loss that would absolve the defendant in this case to have to pay." It concluded that the $200 deposit was part of the "current out-of-pocket expenses for which [D.G.] gets restitution."

As for the softball lessons, while the court understood that lessons "were preexisting and may have continued regardless of whether or not [A.H.] would have committed the offense in this case," the question was "whether or not there is a nexus between her obtaining those lessons now and the defendant's offense conduct." Based on the factual record of the case, "the offense conduct occurred after softball practice, near a softball field, with a high-level competitive softball player, who thereafter had a notable decrease in her ability to perform on the same level." The court stated: "The law is pretty clear that if there's a nexus, and if there's a rational relationship, the court has discretion to order restitution in the full amount. So, the court is also going to order restitution for the softball lessons in the amount of $4,550."

This appeal followed.

## DISCUSSION

Section 730.6 governs restitution in juvenile cases, and states: "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs an economic loss as a result of the minor's conduct shall receive restitution directly from that minor." (§ 730.6, subd. (a)(1).) Section 730.6 requires the juvenile court to "order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." (*Id.*, subd. (h)(1).) Accordingly, a restitution order "shall be of a dollar amount sufficient to

4

fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602." (*Ibid*.) Restitution can be awarded not only to the direct victim of the crime, but also to their parent who sustained economic loss as the result of the crime. (*Id*., subd. (j)(4)(A).)

" 'At the core of the victim restitution statutory scheme is the mandate that a victim who suffers economic loss is entitled to restitution and that the restitution is to be "based on the amount of loss claimed by the victim." ' " (*People v. Superior Court* (*Lauren M.*) (2011) 196 Cal.App.4th 1221, 1226.) Accordingly, a victim seeking restitution " 'initiates the process by identifying the type of loss . . . sustained and its monetary value.' " (*Ibid*.) He or she bears the burden to provide an "adequate factual basis" for the claim. (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) Once the victim makes this prima facie showing, " 'the burden shifts to the defendant to disprove the amount of losses claimed by the victim.' " (*Lauren M.*, at p. 1226.)

Ultimately, the juvenile court must set restitution in an amount " 'reasonably calculated to make the victim whole' " using " 'any rational method' " of calculation. (*In re Alexander A.* (2011) 192 Cal.App.4th 847, 853.) An order of restitution is reviewed for abuse of discretion. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.) " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' " (*Ibid*.) We do not reweigh or reinterpret the evidence, but instead determine whether there is " ' "any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' " (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.)

Here, A.H. challenges only two categories of restitution ordered by the juvenile court. First, A.H. argues that the court abused its discretion in

5

ordering restitution for the $200 service dog deposit because there was no evidence that the unborn puppy would receive service dog training or be "capable of providing comfort, as was recommended by "D.G.'s counselor." We are not persuaded. D.G.'s mother testified that she paid the deposit, and that the dog would be used to help D.G. feel safer: to accompany her on walks and be there with her at nighttime. This provided an "adequate factual basis" for the claim. (*Giordano*, *supra*, 42 Cal.4th at p. 664.) A.H. did not bear his burden to disprove the claim. While D.G.'s mother used the term "service dog," nothing in her testimony suggested that the recommendation required a dog with particular training or categorization under the Americans with Disabilities Act. A.H. did not solicit any testimony on cross-examination, or present any other evidence, that the selected dog was somehow contrary to the counselor's recommendation or would be unable to perform the tasks described above. We thus conclude that the juvenile court's finding—that the dog would afford D.G. emotional support as part of her counseling program—was supported by substantial evidence and provided a factual and rational basis for the restitution ordered. (*In re Johnny M.*, *supra*, 100 Cal.App.4th at p. 1132.)

Second, A.H. argues that the juvenile court abused its discretion in ordering him to pay the full $4,550 for softball lessons. He contends that, because D.G. had already been taking lessons prior to the incident, he should only be financially liable for the $1,750 cost differential between the two sets of lessons. We disagree. There was substantial evidence that D.G.'s extended one-on-one lessons were different than the hitting lessons she had taken before the offense. The extended lessons focused on "very basic" and "elementary" skills, regaining comfort next to strangers, and implementing techniques on the field to deal with D.G.'s anxiety and emotions. D.G. took

these extended lessons after she became unable to perform at her previous level because of the sexual battery. Moreover, as the juvenile court noted, there was a nexus between the offense and these lessons because the sexual battery had occurred after D.G.'s softball practice, in the equipment shed near the softball field. (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 309 ["calculation under section 730.6 must have some factual nexus to the damage caused by the minor's conduct"].) We thus conclude there was a factual and rational basis for the court to order restitution for these extended lessons in the full amount. (*In re Johnny M.*, *supra*, 100 Cal.App.4th at p. 1132.)

In sum, we conclude that the juvenile court did not abuse its discretion in ordering restitution for the $200 service dog deposit and $4,550 softball lessons.

## DISPOSITION

The January 11, 2022 restitution order is affirmed.

7

_____
Van Aken, J.*

We concur:

_____
Richman, Acting P.J.

_____
Miller, J.

*In re A.H.* (A164645)

     * Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.