Filed 12/27/23  P. v. Faulkner CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C097884 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CF00079) |
| v. | |
| DREW AYER FAULKNER, | |
| Defendant and Appellant. | |

Defendant Drew Ayer Faulkner pled no contest to arson of property of another. The trial court ordered defendant to pay $2,879.86 in restitution to the victim John C. for his lost wages.  On appeal, defendant argues the trial court's ordered restitution for lost wages is not supported by substantial evidence and thus constitutes an abuse of discretion.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

According to the probation report, defendant set ablaze John's shade structure and had an argument with John's wife, during which he implied future bad acts. In a written statement, defendant wrote that he "[p]oured gas on it and then threw a rag on it to start the fire." He pled no contest to one count of arson of property of another. The trial court ordered defendant to pay John $91.80 in restitution for his damaged property.

The prosecution later filed a motion to modify restitution. It sought to compensate John for his lost wages in the amount of $14,399.34, a figure based on John missing 17 days of work at a rate of $847.02 per day. At an evidentiary hearing, John testified he is a long-haul truck driver by trade, though he was not employed at the time of the arson. About seven weeks before the arson, he "resigned" from his prior trucking job "with the ability to come back." He left the company "to do some projects around the home." John opted to resign rather than just take time off because his employer would only give him two weeks off, not the three weeks he requested. His prior job was not contract based; he was employed full time.

John testified he worked regularly prior to his resignation, having "only [returned] home for two weeks total . . . in the two years prior." After his hiatus, he planned to return to work as a trucker at one of the "thousands of companies out there." He didn't necessarily intend to return to work at his prior employer, given he believed he could secure better wages and/or benefits elsewhere. Rather than return to work after the fire, John decided to stay home due to defendant's previous threat directed at John's wife. John did not seek a new trucking job until six months after the arson.

During his testimony, John clarified he was not seeking restitution for lost wages in the amount of $14,399.34, a figure he said was calculated by the prosecution, not him. Rather than the $847.02 daily wage put forth by the prosecution, he said he earns "generally" between $300 and $350 per day while working as a long-haul truck driver, though it "doesn't always work out that way."

2

The prosecution submitted various documents into evidence, including a list of information compiled from John's bank account. His banking information, which appeared to be a printed version of his online checking portal, accounted for various deposits from his prior employer that occurred before the arson. The document included deposits that spanned nearly 11 months, ending around the time John testified he left his prior job. Deposit amounts were listed in reference to only about seven months of deposits, with approximately four months of deposits redacted. The redacted deposit amounts included deposits made in the three and a half months before his resignation. John testified each deposit signified one week of pay. The deposits showed John's average weekly wage was $847.02. The prosecution also submitted into evidence John's handwritten account of the 17 days in which he contended he was entitled to restitution for lost wages. All 17 days occurred on or after the fire.

The dates fell into two general categories: days John assisted with the investigation and days John attended court proceedings. Regarding the first category, John listed 10 dates in which he assisted generally in the investigation by working with investigators, retrieving surveillance video, providing his phone for download, or giving a victim statement. He further listed an additional date in which he said he "was stuck [at] home" due to a "warrant service." For the second category, John stated he attended "court" six times.

John testified that every day in which he spent helping investigators or attending court precluded him from earning an entire week of wages based on how his industry works. For example: If he was offered a load to drive to Minnesota, and he had a court date that week, he would be forced to refuse the entire load, which could take more than five days to complete, to attend court on a single day.

Defendant did not introduce any affirmative evidence.

The trial court denied John's request for a week's worth of compensation for each day spent assisting investigators or attending court, concluding it was too speculative.

Rather, the trial court awarded John $2,879.86 in restitution for 17 days of lost wages, valued at a daily rate of $169.40, with interest to accrue at 10 percent annually.

Defendant appeals.

DISCUSSION

Penal Code[1] section 1202.4, subdivision (f) provides, subject to exceptions not relevant here, that crime victims are entitled to restitution "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." " '[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) "[A] prima facie case for restitution is made by the [prosecution] based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] 'Once the victim has . . . made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*Ibid*.)

" ' " '[S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.' [Citation.]" [Citation.] [¶] This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution.' " (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1275.)

I

*Sufficient Evidence Supports The Trial Court's Factual Findings*

Defendant contends insufficient evidence supports the trial court's findings that John made $169.40 a day, that John participated in the investigation and prosecution of

---

[1]     All undesignated section references are to the Penal Code.

the case on the days he claimed he did, and that John could have gone to work on the days he claimed he missed work to assist with the case. We disagree.

" 'In reviewing the sufficiency of the evidence [to support a factual finding], the " 'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." . . . "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.' " (*People v. Millard*, *supra*, 175 Cal.App.4th at p. 26.)

First, defendant claims John's average daily rate of $169.40 is not supported by substantial evidence. The record contains banking information provided by John that includes deposit amounts totaling approximately seven months. The information was relatively recent, having come from the period of time when he worked for his most recent employer. John testified that those deposits constituted his weekly pay from that time. The record further contains a calculation provided by the prosecution that the "average pay" of those deposits was $847.02, signifying John earned, on average, $847.02 weekly. Therefore, a reasonable trier of fact tasked with discerning John's average daily pay could have reasonably divided his weekly pay by five to account for the typical five-day work week, concluding, as occurred here, that John earned, on average, $169.40 per day. Defendant did not introduce any affirmative evidence, and we see no reason to second-guess that reasonable calculation on appeal.

Relatedly, defendant argues section 1202.4, subdivision (f)(3)(E) requires a 12-month showing of wages to establish substantial evidence thereof. Not so. Section 1202.4, subdivision (f)(3)(E) classifies lost wages as either "commission income" or "base wages." The statute specifies that establishing "*commission* income" requires admission of "evidence of *commission* income during the 12-month period prior to the

5

date of the crime," unless good cause can be shown. (*Ibid*., italics added.) No similar requirement is afforded to base wages. (See § 1202.4.) We recognize that if the Legislature intended for the courts to require a similar requirement applicable to base wages, it would have said so. It did not, and defendant has not made a showing that John's wages constituted commission wages rather than base wages.

Second, defendant contends substantial evidence does not support John having participated in the investigation and prosecution of the case for a total of 17 days. The record contains a document compiled by John submitted into evidence that lists 17 days in which he sought compensation for lost income. John testified that those days constituted days in which he was either helping investigators, going to the courthouse, or otherwise assisting the prosecution of the case. We recognize that the record independently confirms John's testimony regarding only a handful of dates. For instance, the probation report confirms John provided investigators with his surveillance footage but leaves unclear exactly when he handed it over. Further, the report confirms John spoke with investigators on some of the dates he listed but not others.

This lack of independent confirmation, however, is not fatal. It is well established that the testimony of one person is sufficient to establish the existence of a fact. (See e.g., *People v. Scott* (1978) 21 Cal.3d 284, 296 ["The uncorroborated testimony of a single witness is sufficient . . . , unless the testimony is physically impossible or inherently improbable"].) Here, the record contains no information suggesting it was "physically impossible or inherently improbable" that John either assisted with the investigation or attended court. (*Ibid*.) Further, " '[d]eferential review is particularly necessary when, as here, the factual determination depends in part on judging a witness's credibility,' and we must uphold such a determination if it is supported by substantial evidence." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1545.) Here, we see no reason to disavow the trial court's credibility findings related to John's court attendance and assistance with the investigation. Defendant did not introduce any affirmative

6

evidence to the contrary. We conclude the trial court's finding that John participated in the investigation and prosecution of the case for a total of 17 days is supported by substantial evidence.

Third, defendant appears to attack John's credibility as it pertains to his testimony that he remained home from work with his family because he feared for his family's safety. But the trial court did not award John restitution because he stayed home for his family's safety. Thus, defendant's credibility in this regard is irrelevant.

In any event, substantial evidence supports the finding that John would have been employed on the days he claimed he missed work for the purpose of assisting with the investigation and prosecution of the case. The record includes banking information that shows John was employed at a trucking company for at least several months. He testified he "resigned" from the company on his own accord, with an offer "to come back" when he was ready. He further testified there were "thousands of companies out there," signifying he had bountiful employment prospects to choose from when he decided to return to the workforce. Rather than return to work after the fire, John testified he elected to stay home. While John testified a motivating factor was to protect his family, he also provided evidence that during his time away from work he also assisted with the investigation and attended court proceedings. From this evidence a trier of fact could reasonably find defendant could have been employed after the fire and on the days he assisted with the investigation and attended court proceedings.

II

*The Trial Court Did Not Abuse Its Discretion In Concluding John Could Receive*
*Restitution For The Days He Assisted With The Prosecution's Investigation*

Defendant contends the trial court abused its discretion when it ordered him to pay John $2,879.86 in lost wage restitution. Specifically, he argues the trial court improperly

awarded John restitution amounting to a full day of wage loss on days where he stated he only assisted for a few hours and on days he assisted investigators "after working hours."

Restitution is properly awarded for "[w]ages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution." (§ 1202.4, subd. (f)(3)(E).) The trial court has broad discretion in determining restitution, but it must utilize a "rational method of fixing the amount of restitution" resulting in an amount "reasonably calculated to make the victim whole." (*People v. Baker* (2005) 126 Cal.App.4th 463, 470; see also § 1202.4, subd. (b)(1) ["The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense"].) However, the trial court may not " 'provide the victim with a windfall.' " (*People v. Millard*, *supra*, 175 Cal.App.4th at p. 28.) " ' "A victim's restitution right is to be broadly and liberally construed." [Citation.] " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " ' " (*Id.* at p. 28.)

Here, a trier of fact could have reasonably concluded that a long-haul truck driver would be required to take off a full day of work to attend to an engagement related to this case, even if such proceedings spanned only a few hours. Such logic applies equally to John receiving compensation for work done "after working hours." A long-haul truck driver does not hold regular working hours. It is unreasonable to compensate all employment classifications based on a set formula, and the trial court here did not abuse its discretion in declining to do so. Moreover, to prevent a windfall, the trial court declined to impose restitution for a week's worth of work when John only assisted in the prosecution or attended court for a single day. Accordingly, we conclude the trial court employed a "rational method of fixing restitution" that ensured the restitution for John's lost wages was "reasonably calculated to make [him] whole" and that, in doing so, it did not abuse its discretion. (*People v. Baker*, *supra*, 126 Cal.App.4th at p. 470.)

8

DISPOSITION

The judgment is affirmed.


/s/_____
ROBIE, Acting P. J.


We concur:


/s/_____
KRAUSE, J.


/s/_____
WISEMAN, J.*

_____

\*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.