Filed 5/30/24  P. v. Proman CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B326435 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA481238) |
| v. | |
| MATTHEW B. PROMAN, | |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Los Angeles County, Mark K. Hanasono, Judge.  Affirmed.

Law Office of Michael G. Raab and Michael G. Raab for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Seth P. McCutcheon, and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After Matthew Proman (Proman) discovered that Colby Cyburt (Cyburt) was dating his ex-girlfriend, he created hundreds of internet posts falsely claiming that Cyburt was a sex offender engaged in a real estate Ponzi scheme.

Cyburt expended significant resources to remove the posts and mitigate the damage to his reputation. The real estate investment firm that employed Cyburt nevertheless remained concerned about the posts and prohibited him from working on new deals. Cyburt therefore left the firm mid-year, forfeiting a portion of his $100,000 annual salary and a substantial year-end bonus. Proman's posts also prompted Cyburt's partners in the purchase of an $8 million investment property to back out of the transaction, depriving Cyburt of both an upfront commission and longer-term investment profits.

Proman pleaded no contest to cyberstalking, and Cyburt requested $413,178 in victim restitution consisting of $58,178 in expenses incurred to remove the posts, $190,000 in lost wages, and $170,000 in lost profits from the cancelled $8 million transaction. Proman stipulated to pay the requested $58,178, but objected to the amounts Cyburt sought for lost wages and profits. The trial court granted Cyburt's restitution request in full.

On appeal, Proman asks us to vacate the court's restitution order, arguing (1) insufficient evidence supports the amounts awarded to compensate Cyburt for lost wages and profits, (2) Cyburt's lost wages and profits are impermissibly speculative, (3) the order provides Cyburt with an inappropriate windfall, and (4) the award improperly includes compensation for noneconomic damage to Cyburt's reputation.

We conclude, however, that the record does not support Proman's claims. Accordingly, we affirm.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[1]

Between June and September 2019, Proman created hundreds of online posts falsely accusing Cyburt of orchestrating a fraudulent real estate investment scheme. Proman also posted untrue allegations that Cyburt had been arrested for possession of child pornography.

Cyburt first learned of the libelous posts from the compliance department of the real estate investment firm where he worked as an associate. He then spent hundreds of hours and tens of thousands of dollars working with attorneys and private investigators to remove the posts. Notwithstanding Cyburt's efforts, the firm remained "very concerned" about its name being associated with the allegations in the posts, and it prevented Cyburt from working on new real estate transactions. He therefore left the firm in November 2019, forfeiting a year-end bonus that he anticipated would have totaled more than $90,000. Proman's conduct also caused Cyburt's co-investors in the purchase of an $8 million multifamily building in Los Angeles, California to cancel the transaction. As a result, Cyburt lost an $80,000 upfront commission, as well as the longer-term profits his share of the investment in the building would have generated.

In 2021, Proman pleaded no contest to one count of cyberstalking Cyburt and three other victims, in violation of Penal Code section 646.9.[2] The trial court sentenced Proman to two years

---

[1] We summarize here only the facts and procedural history relevant to our resolution of this appeal. We draw our summary of Proman's conduct primarily from Cyburt's testimony at the restitution hearings. On appeal, Proman does not dispute the veracity of this portion of Cyburt's testimony.

[2] Unspecified statutory references are to the Penal Code.

of formal probation and conducted evidentiary hearings on July 12 and October 18, 2022 to determine the appropriate amount of victim restitution.

At the hearings, the prosecution presented testimony from Cyburt, as well as an expense log he prepared, in support of his request for three categories of restitution: (1) $53,178 in fees and costs for investigators, attorneys, and an improved home security system; (2) $190,000 in lost wages; and (3) $170,000 in lost profits resulting from the cancelled $8 million transaction. Proman cross-examined Cyburt, but introduced no evidence of his own. Following the hearings, Proman agreed to pay the $53,178 in restitution Cyburt requested to cover his investigator, attorney, and security system fees. Proman objected, however, to the two remaining categories of restitution Cyburt sought.

The trial court granted Cyburt's requests for restitution in full, explaining in relevant part:

"So I do find that Mr. Cyburt did testify credibly. His testimony is sufficient to provide and demonstrate the adequate factual basis for his claims by a preponderance of the evidence . . . and, ultimately, it is up to the defense to—if the defense wants to dispute or rebut any of the claims, the defense must put forward additional information to rebut the amount claimed, and there was nothing sufficient to do that.

"The outstanding two items requested by Mr. Cyburt are, first, the request for $190,000. This is the amount for time that Mr. Cyburt was forced to miss work to meet with the district attorney and other commitments relating to the case. This also includes the loss of future earnings and damage to his reputation, which forced him to leave his job. Third, the loss of a $90,000 bonus, which he was unable to collect because he left his job. And, fourth, the time while unemployed after leaving his job.

4

"Mr. Cyburt was forced to miss 18 days of work and meetings and spent 60 hours per week during a two-month period for security procedures and speaking with the district attorney and other attorneys. He is entitled to wages or profits lost due to time spent as a witness or in assisting the police or the prosecution.

"Because of the defamatory content about Mr. Cyburt posted online by [Proman], Mr. Cyburt's employer and business associates did not utilize his services. Mr. Cyburt was forced to leave his job and not receive the bonus and future salary. He would not have left the job early had he not been victimized by [Proman]. He remained unemployed for two months after leaving his job.

"Mr. Cyburt has limited his requests for restitution for these events based on a one-year salary of $100,000. The time missed from work and time spent with the district attorney and other attorneys and for the security procedures alone constitutes nearly four months or one-third of the year. The remaining amount would constitute eight months of salary. This requested amount is far from unreasonable for damage to his professional reputation and loss of earnings.

"The remaining $90,000 represents the bonus which Mr. Cyburt did not collect because he left the job early. Mr. Cyburt had every expectation to receive this amount had [Proman] not damaged his business reputation. . . .

"Mr. Cyburt has demonstrated an adequate factual basis for the entire amount of $190,000 by a preponderance, and [Proman] has not disproved this amount.

"With regard to the second outstanding item of [$]170,000 for lost income from a property investment that failed due to [Proman's] conduct against Mr. Cyburt, this amount represents an upfront gain or commission and long term profit—a long term profit share of the property. The former was to be $80,000 and the

remaining amount was the profit projected by Mr. Cyburt.  He did, at one point, characterize it—or the defense characterized it as speculation, and Mr. Cyburt did not disagree with that term at the time; however, Mr. Cyburt has demonstrated an adequate factual basis for this claim by a preponderance . . . .  The court will order the entire $170,000 as part of the restitution.

"The total amount awarded to Mr. Cyburt is $413,178[.]  This includes the [$]360,000 that I discussed with these two items and the previously stipulated amount of $53,178."

Proman timely appealed.

## DISCUSSION

### A. *Law Governing Restitution Orders*

Pursuant to section 1202.4, subdivision (f), "[w]here a victim of crime has suffered economic loss because of a defendant's conduct, the court must require [the] defendant to pay restitution to the victim in an amount sufficient to fully reimburse the victim." (*People v. Valle* (2023) 93 Cal.App.5th 1329, 1332 (*Valle*); § 1202.4, subd. (f).)  Although a restitution order "should not overcompensate the victim with a windfall" (*Valle, supra*, at p. 1332), " ' "[a] victim's restitution right is to be broadly and liberally construed." [Citation.]' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).)

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss.  [Citations.]  'Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.  [Citations.]' [Citation.]" (*Millard, supra*, 175 Cal.App.4th at p. 26.)

6

" '[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole. [Citations.]' [Citations.] 'There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action. [Citation.]' [Citation.]" (*Millard*, *supra*, 175 Cal.App.4th at pp. 26–27.)

We review a restitution order for abuse of discretion, and we will not find any such abuse " ' " '[w]hen there is a factual and rational basis for the amount of restitution ordered by the trial court.' " [Citations.]' " (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) " 'In reviewing the sufficiency of the evidence [to support a factual finding], the " 'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citations.]' [Citation.]" (*Ibid.*)

### B.   *The Trial Court Acted Within Its Discretion in Ordering $413,178 in Restitution to Cyburt*

In fashioning the restitution order, the trial court applied a rational method reasonably calculated to make Cyburt whole. (*Millard*, *supra*, 175 Cal.App.4th at pp. 26–27.) The court

7

ordered Proman to pay restitution falling into three categories—
(1) attorney, investigator, and security system costs, (2) lost
wages, and (3) lost profits—each tethered to specific economic
losses Cyburt sustained as a direct result of Proman's conduct.  The
prosecution supported each category of claimed loss with testimony
and documentary evidence from Cyburt.  And Proman failed to offer
any evidence of his own to rebut Cyburt's prima facie showing of
loss.  (See *Millard*, *supra*, 175 Cal.App.4th at p. 26.)  We therefore
conclude the court acted within its discretion in ordering $413,178
in restitution to Cyburt.

  None of Proman's arguments persuades us otherwise.
First, Proman faults the prosecution for presenting only Cyburt's
testimony and an expense log Cyburt himself prepared to
substantiate his claims of lost wages and profits.  Proman insists
that this "uncorroborated" evidence is insufficient to support
the restitution order—particularly because Cyburt purportedly
promised and failed to produce additional documentation
supporting his claimed losses.[3]

  Section 1202.4, however, "does not, by its terms, require
any particular kind of proof."  (*People v. Gemelli* (2008) 161
Cal.App.4th 1539, 1543.)  Indeed, Proman concedes that the
"evidentiary requirements to establish [a] victim's economic loss
are minimal and that a victim can give his opinion of the value"
of the loss.  And here, the trial court determined that Cyburt
provided credible testimony substantiating his losses.  (*People v.
Baker* (2005) 126 Cal.App.4th 463, 470 [at a restitution hearing,

---

  [3] For example, during the July 12, 2022 restitution hearing,
the deputy district attorney asked whether "sometime in the near
future, [Cyburt would] be able to find [additional] documentation
and supply it to the court."  Cyburt responded, "Yes, I'll try to do
that."

" ' " ' "[s]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes" ' " ' "].)

Second, Proman contends that Cyburt's claimed losses arising from the forfeited year-end bonus and the cancelled $8 million real estate transaction are impermissibly speculative. Proman urges that Cyburt "mere[ly] anticipat[ed]" he would receive the bonus, and notes that Cyburt "recognized at the initial restitution hearing that, 'it's very tough to quantify' " the profits he lost on the cancelled real estate deal.

Proman does not dispute, however, that Cyburt received a $90,000 year-end bonus in 2018, and Proman offered no evidence at the restitution hearings challenging Cyburt's testimony that he reasonably expected an even larger bonus in 2019. Similarly, Proman does not dispute that Cyburt stood to earn an $80,000 upfront commission in connection with the cancelled real estate deal, nor did Proman present any evidence indicating that Cyburt had overestimated the long-term profits he anticipated the $8 million transaction would generate.

Moreover, we note that Cyburt was forced to estimate the bonus and profits he might have earned only because Proman's conduct deprived him of those gains. (See *People v. Harvest* (2000) 84 Cal.App.4th 641, 653 ["[a]s for defendant's argument that the [restitution] award was predicated on the speculative assumption that [the victim's] financial status would not change, all that need be said is that this speculation was necessitated by defendant's murder of [the victim]"].)

Third, Proman argues the court erred in including a full year of Cyburt's salary in the restitution award because Cyburt "was unemployed for only a couple of months prior to securing a higher paying job." But " '[t]here is no requirement the restitution order

be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action. [Citation.]' [Citation.]" (*Millard*, *supra*, 175 Cal.App.4th at pp. 26–27; see also *People v. Giordano* (2007) 42 Cal.4th 644, 666 [no abuse of discretion notwithstanding trial court's "methodological imprecision" in calculating amount of restitution].) In addition, the court explained it was awarding Cyburt a year's salary to compensate him not only for his two-month period of unemployment, but for opportunities he lost even while he remained employed. (Factual Summary and Procedural History *ante*, p. 5 ["[b]ecause of the defamatory content about Mr. Cyburt posted online by [Proman], Mr. Cyburt's employer and business associates did not utilize his services"].)

Fourth, and finally, Proman insists that the restitution order improperly compensates Cyburt for noneconomic harm to his professional reputation. Although Proman is correct that a court generally may not order restitution to compensate a victim for noneconomic loss (*People v. Jennings* (2005) 128 Cal.App.4th 42, 57), we are not persuaded that the court did so here. In explaining the rationale underlying its restitution order, the court made clear that it considered harm to Cyburt's reputation only insofar as that harm resulted in economic loss to Cyburt in the form of lost wages and profits. (See Factual Summary and Procedural History *ante*, p. 5 [the restitution amount "includes the loss of future earning and damage to [Cyburt's] reputation, which forced him to leave his job"]; *ibid.* ["Cyburt had every expectation to receive th[e $90,000 bonus] amount had [Proman] not damaged his business reputation"].)

10

**DISPOSITION**

The restitution order is affirmed.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

WEINGART, J.

11