[No. C055107. Third Dist. Mar. 24, 2008.]

In re WILLIAM K., a Person Coming Under the Juvenile Court Law.
SHASTA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and
Respondent, v.
RONALD F., Defendant and Appellant.

4

**COUNSEL**

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

Karen Keating Jahr, County Counsel, and John L. Loomis, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**NICHOLSON, J.**—Ronald F., biological father of the minor, appeals from the judgment of disposition. (Welf. & Inst. Code, §§ 358, 360, 395; further undesignated statutory references are to this code.) Appellant contends the juvenile court erred in failing to (1) set aside a voluntary declaration of paternity executed by another man; (2) find he was a presumed father under *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615, 823 P.2d 1216] (*Kelsey S.*); and (3) require compliance with newly enacted section 224.3, subdivision (e)(1), relating to notice under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We affirm.

FACTS

In September 2006, the Shasta County Department of Social Services (DSS) removed the minor, who tested positive for methamphetamine and marijuana at birth, from the mother's custody. Appellant was incarcerated at the time for failure to register as a sex offender. DSS filed a petition alleging the minor and his half sibling were at risk of physical harm due to the mother's substance abuse problems and because the mother allowed appellant, who had a criminal history of violence, sex offenses and drugs, to stay in the home.[1] The court ordered the minor detained.

From the outset of the proceedings, the mother identified appellant as the biological father of the minor but said that W.K. signed a declaration of paternity and is identified as the minor's father on the birth certificate. Although the minor was the result of a "planned pregnancy" with appellant, the mother took these steps to protect the minor from appellant when she discovered his status as a registered sex offender.

---

[1] The half sibling has a different father and is not a subject of this appeal.

Upon being sent notice of proceedings, appellant completed a Judicial Council form JV-130 (Parental Notification of Indian Status) identifying possible Cherokee heritage. He also completed a statement regarding paternity in which he indicated he did not know if he is the father of the minor, but requested testing to determine whether he is.

DSS sent notice of the proceedings to the Cherokee tribes. The Cherokee Nation responded that the minor could not be traced in tribal records and "will not be considered an 'Indian child/children' " as defined by the ICWA. The Eastern Band of Cherokee Indians responded that the minor "is not considered an 'Indian Child' " in relation to that tribe. The United Keetoowah Band of Cherokee Indians responded that "[t]here is no evidence that the [minor is] descendants [sic] from anyone on the Keetoowah Roll. Therefore, [he] is not eligible for enrollment and the United Keetoowah Band of Cherokee Indians in Oklahoma will not intervene in this case." The Confederated Tribes of the Grand Ronde Community of Oregon responded that the minor did "not qualify for membership."

Appellant was released from custody and attended the jurisdictional hearing on December 8, 2006. The court ordered paternity testing, took judicial notice of an order permitting appellant to have visitation with his other minor child, sustained the petition and set a disposition hearing. The court also found, based on the report of the tribes' responses, that the ICWA did not apply to the case.

An addendum report in February 2007 stated that appellant had completed paternity testing but no services were recommended because he was only a biological father and another man, W.K., qualified as a presumed father. The report noted that, although appellant attended the mother's first sonogram, he was not otherwise a part of the pregnancy and did not support the mother while she was pregnant. Due to his prior incarceration and the dependency proceeding, appellant had no relationship with the minor.

A second addendum stated that paternity testing showed appellant is the biological father of the minor. The addendum also detailed appellant's contact with DSS beginning in November 2006 when appellant was released from custody. In December 2006, appellant brought clothes and blankets for the minor to the DSS office. In January 2007, appellant spoke to the social worker and in February, dropped off a disposable camera so the foster parent could take photographs of the minor for him. During one conversation with appellant, the social worker had the impression he was seeking presumed father status to improve his position in a parole appeal which related to his

other child. When asked about this, appellant denied the motivation. In a letter attached to the report, appellant stated he had many more contacts with the social worker than had been reported. Copies of the delivered-service logs, which reflected all contacts between appellant and the social worker, were attached to the addendum.

According to the addendum, appellant's parole officer told the social worker that appellant minimized his sex offenses and sex offender status. Appellant's most recent parole violation was for being in the home of a female minor.

The addendum also addressed the status of W.K., the presumed father who had been with the mother during her pregnancy and was present for the minor's birth. Although aware he had no biological connection to the minor, W.K. held the minor out as his own child and intended to marry the mother.

At the hearing, appellant's counsel made an offer of proof that, if called, appellant would testify he had an ongoing relationship with the mother before she became pregnant; the pregnancy was planned; he intended to assume a parental role before he was arrested; upon his release he brought clothing and blankets for the minor, sent cards, and provided a camera for photographs; he completed paternity testing; he participated in a substance abuse assessment and was found not to need treatment; he completed a parenting class; he previously lived with his now 12-year-old son and has visitation rights; and he believes it is in the best interests of the minor to override the declaration of paternity.

The court acknowledged the existence of the visitation order for appellant's other child but found the bare fact of the order was not persuasive since the circumstances under which it was entered were unknown. The court relied upon all the facts, including appellant's presence at the first sonogram and his status as a registered sex offender. However, the court also found that despite the planned pregnancy, appellant did nothing to assure his status as the minor's father and concluded appellant had not taken the necessary steps to be more than a mere biological father. That fact and appellant's background led the court to find that it would not be in the minor's best interest to offer appellant services. The court adjudged the minor a dependent, reiterated that the ICWA did not apply, and adopted a reunification plan for the mother and the presumed father.

DISCUSSION

I

Appellant contends the court erred in failing to set aside the voluntary declaration of paternity.

■ The voluntary declaration of paternity (VDP) is a means by which a man who is identified as the natural father by the unmarried natural mother may assert paternity. (Fam. Code, § 7571.) The Legislature enacted the statutes creating the declaration process to further the state's interest in establishing paternity for all children and to provide a means of establishing paternity that avoided the need for a lengthy and expensive court process. (Fam. Code, § 7570.) Once signed and filed with the Department of Child Support Services, the VDP has the effect of a judgment and is a conclusive presumption of paternity. (Fam. Code, §§ 7573, 7611, 7612.)

■ The VDP is subject to being set aside if genetic testing establishes that someone other than the declarant father is the biological father of the minor unless the court finds that setting aside the declaration is not in the minor's best interest. (Fam. Code, § 7575, subd. (b).) A motion for genetic testing under Family Code section 7575 may be brought only by the mother, the declarant father or the local child support agency in any action which determines custody of the minor. (Fam. Code, § 7575, subd. (b)(3)(A).) Additionally, either parent may file a motion to set aside the paternity judgment resulting from the VDP pursuant to Code of Civil Procedure section 473. (Fam. Code, § 7575, subd. (c).) In determining whether to set aside a VDP, the court retains the power to act as a court of equity. (Fam. Code, § 7575, subd. (c)(4).)

A judgment of paternity based upon a VDP may also be set aside on a motion by the mother, the previously established father, or the child "if genetic testing indicates that the previously established father of a child is not the biological father of the child." (Fam. Code, § 7646, subd. (a).) However, even if genetic testing shows the previously established father is not the biological father, the court may deny a motion to vacate the judgment if doing so is in the best interest of the child. (Fam. Code, § 7648.)

■ The Uniform Parentage Act (UPA) (Fam. Code, § 7600 et seq.) recognizes the conclusive presumption of paternity attached to the VDP and creates a rebuttable presumption of paternity under several factual circumstances, including where a man "receives the child into his home and openly holds out the child as his natural child." (Fam. Code, § 7611, subd. (d); see § 7612.) Under the UPA, "[a]ny interested party may bring an action at any

time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under" the circumstances of this particular subdivision. (Fam. Code, § 7630, subd. (b).)

In neither the juvenile court nor this appeal has appellant specified which of the various means of setting aside a VDP he attempted to establish. Accordingly, we shall examine each of the five scenarios in light of the factual setting presented.

■ First, appellant is not one of the designated parties who may bring a motion for genetic testing in order to set aside a VDP pursuant to Family Code section 7575, subdivision (b). (*In re Christopher M.* (2003) 113 Cal.App.4th 155, 164 [6 Cal.Rptr.3d 197].) However, a court may order genetic testing in a "proceeding in which paternity is a relevant fact." (Fam. Code, § 7551.) Assuming that if the court makes such an order, an individual other than those designated to bring a motion for genetic testing can bring a motion to set aside the VDP, the court could entertain such a motion based upon the results of the available genetic testing and would have discretion to set aside the VDP unless it determined that denial of the motion was in the best interests of the child. (Fam. Code, § 7575, subd. (b)(1).) The statute sets forth several illustrative factors the court may consider in assessing the best interest of the child, including the age of the child, the length of time since the VDP was executed, the nature of the relationship between the declarant father and the child, the request of the declarant father that the relationship continue, and the benefit to the minor in establishing biological parentage. (Fam. Code, § 7575, subd. (b)(1).)

Here, appellant did not formally bring such a motion, but the court evidently treated appellant's presentation at the disposition hearing as the equivalent of a motion. After considering the reports and appellant's offer of proof, the court exercised its discretion to affirm the paternity determination represented by the VDP, citing the facts presented to it surrounding the execution of the VDP, the declarant father's desire to continue the parent-child relationship, appellant's background of crime, including multiple sex offenses, his status as a registered sex offender, and his failure to promptly assert his paternal rights. The court assessed not only the listed statutory factors but other factors relevant under the circumstances of the case in making its determination, giving such weight to the various factors as appropriate. No abuse of discretion appears.

■ Second, either parent may seek to set aside the paternity judgment resulting from the VDP pursuant to Code of Civil Procedure section 473 for mistake, inadvertence or excusable neglect. (Fam. Code, § 7575, subd. (c).)

No such conditions are suggested and appellant, assuming he qualifies as a parent within the meaning of the statute, did not bring any action or motion on this ground.

■ Third, an equitable collateral attack on the VDP is available on the grounds of extrinsic fraud. (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068 [202 Cal.Rptr. 116].) However, appellant recognizes that intrinsic, not extrinsic fraud is what he alleges occurred in this case.

■ Fourth, a motion to vacate a judgment of paternity based upon genetic testing may be brought pursuant to Family Code section 7646, but the moving parties are limited to the mother, the child and the previously established father. (Fam. Code, § 7646, subd. (a).) Appellant is not a person who can bring this motion.

■ Finally, any interested person can bring an action to establish paternity pursuant to Family Code section 7630, subdivision (b). However, that subdivision is limited to determining paternity under the rebuttable presumption of presumed fatherhood found in Family Code section 7611, subdivision (d), i.e., that an individual has received the child into his home and openly held the child out as his natural child. In this case, there was no rebuttable presumption, only the conclusive presumption of the judgment of paternity stemming from the VDP. Family Code section 7630 is inapplicable.

■ The court did not abuse its discretion in declining to set aside the VDP, having found that the best interests of the minor would not be furthered by doing so. No other procedure for setting aside a VDP was available to appellant.

## II

Appellant contends the juvenile court erred in failing to find he met the requirements to establish presumed father status under the holding in *Kelsey S.*

■ *Kelsey S.* involved a child of unwed parents, whose mother planned to place the child for adoption. (*Kelsey S., supra*, 1 Cal.4th at p. 821.) Shortly after the child's birth, the biological father filed an action to establish paternity, and the prospective adoptive parents filed an adoption petition. (*Id.* at p. 822.) The Supreme Court held that statutes allowing "a mother unilaterally to preclude her child's biological father from becoming a presumed father and thereby allowing the state to terminate his parental rights on nothing more than a showing of the child's best interest" violated the father's due process rights. (*Id.* at p. 849.) Thus, "[i]f an unwed father promptly

comes forward and demonstrates a full commitment to his parental responsibilities—emotional, financial, and otherwise—his federal constitutional right to due process prohibits the termination of his parental relationship absent a showing of his unfitness as a parent. . . . [¶] . . . The father's conduct both before and after the child's birth must be considered. Once the father knows or reasonably should know of the pregnancy, he must promptly attempt to assume his parental responsibilities as fully as the mother will allow and his circumstances permit." (*Ibid.*, italics omitted.)

Here, the evidence before the court was that the pregnancy was planned and appellant attended the first sonogram. Appellant was then incarcerated on a parole violation and did nothing to assert his parental responsibilities or secure custody of the child. When notified of the dependency proceedings appellant did not immediately assert paternity but instead responded that he did not know if he was the minor's father but was willing to take a paternity test to find out. It was not until his release from prison that he made some effort to act in a parental role.

At best, the evidence before the juvenile court was conflicting and the court resolved the conflict adversely to appellant. We may not disturb that resolution. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214 [272 Cal.Rptr. 316]; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16 [265 Cal.Rptr. 650]; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [27 Cal.Rptr.2d 595, 867 P.2d 706].) We note further that even had appellant successfully demonstrated he was a presumed father under *Kelsey S.*, that fact alone would not have been sufficient to overcome the judgment of paternity represented by the VDP. (Fam. Code, § 7612, subd. (c).)

### III

Appellant argues remand is required to comply with new statutes, sections 224 through 224.6, relating to the notice requirements for the ICWA. Appellant claims that the social worker is "now instructed to alert tribal authorities to make a distinction between 'enrollment' in the tribe and 'membership in the tribe.' "

Section 224.3, subdivision (e)(1), was enacted as a part of a comprehensive reorganization of statutes relating to application of the ICWA in California. (Stats. 2006, ch. 838, § 32.) Sections 224 to 224.6 adopt most of the provisions of the ICWA and certain of the federal guidelines relating to notice under the ICWA while adding provisions unique to this state.

Section 224.3 concerns the determination of whether the minor is an Indian child within the meaning of the ICWA. Subdivision (e)(1) of that

section provides: "A determination by an Indian tribe that a child is or is not a member of or eligible for membership in that tribe, or testimony attesting to that status by a person authorized by the tribe to provide that determination, shall be conclusive. Information that the child is not enrolled or eligible for enrollment in the tribe is not determinative of the child's membership status unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom."

This provision restates the commentary in the federal guidelines, which recognizes that "[e]nrollment is not always required in order to be a member of a tribe [although it] is the common evidentiary means of establishing Indian status . . . ." (Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, 67586, B.1. Commentary (Nov. 26, 1979).) The provision also clarifies the evidentiary requirements for determining whether a minor is an Indian child by specifying that a mere statement of enrollment or eligibility for enrollment is inadequate to demonstrate the minor is an Indian child. However, neither the statute nor the relevant rule of court, may impose any duty upon the social worker to elicit a particular response from a noticed tribe. (§ 224.3, subd. (e)(1); Cal. Rules of Court, former rule 5.664(g)(2); Cal. Rules of Court, current rules 5.480–5.487.)

 At the outset, we note that the juvenile court found the ICWA did not apply at a hearing in December 2006. The new statute did not become effective until January 2007. Nothing in the statute suggests that it should operate retroactively and there is no basis for doing so. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230–231 [46 Cal.Rptr.3d 57, 138 P.3d 207].)

To the extent that the court's reiteration in March 2007 of its earlier conclusion that the ICWA did not apply brings this case within the effective date of the statute, appellant still cannot prevail. The new provision set forth above relates to the evidence required to determine whether the ICWA applies. No objection to the evidentiary basis for the court's ruling was made at either the December 2006 or the March 2007 hearing. Any claim of failure to comply with the terms of the statute has been forfeited. (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558 [51 Cal.Rptr.2d 43]; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501–502 [102 Cal.Rptr.2d 196]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 [13 Cal.Rptr.2d 786, 90 P.3d 746].)

Additionally, we note that three of the four tribal responses did fall within the provisions of the new statute. The fourth response, from the United Keetoowah Band of Cherokee Indians in Oklahoma, referred primarily to lack of enrollment but also included language that, when construed as a whole, satisfied the additional requirements of section 224.3, subdivision (e)(1).

## DISPOSITION

The judgment of disposition is affirmed.

Scotland, P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 11, 2008, S163305.