Filed 12/31/25  In re M.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>M.G.,<br><br>    Defendant and Appellant. | E085478<br><br>(Super.Ct.No. DLIN2300032)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Emily A. Benjamini, Judge.  Affirmed.

Jake E. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steven Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

Appellant M.G. (minor) appeals from a victim restitution order, arguing that it is not supported by substantial evidence.  We affirm.

PROCEDURAL BACKGROUND

The Riverside County District Attorney's Office filed three Welfare and Institutions Code[1] section 602 petitions against minor.  A petition filed on March 10, 2023, alleged that he committed two assaults with a deadly weapon.  (Pen. Code, § 245, subd. (a), paragraphs 1 & 2.)  A petition filed on August 11, 2023, alleged that minor committed a burglary (Pen. Code, § 459, paragraph 1) and vandalism (Pen. Code, § 594, subd. (a), paragraph 2) of the Desert Princess Clubhouse.  A petition filed on January 2, 2024, alleged that minor obstructed or resisted an officer in the performance of his/her duties.  (Pen. Code, § 69, paragraph 1.)

On February 14, 2024, minor admitted paragraph 1 of the March 10, 2023 petition and paragraph 1 of the January 2, 2024 petition, with the understanding that he would be granted deferred entry of judgment (DEJ) and placed on probation for one year, and that, if successful on probation, the allegations would be dismissed and his record sealed.  Minor stipulated to a factual basis, based on the police reports for each of the admissions.  Upon the prosecutor's motion, the court dismissed paragraph 2 of the March 10, 2023 petition and the entire August 11, 2023 petition.  Minor's probation included the

_____

**1**  All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

condition that he pay restitution to the Desert Princess Golf Club[2] (the victim) in an amount to be determined by the Riverside County Probation Department (the probation department) for the allegations in the August 11, 2023 petition.  The court granted DEJ as agreed upon and set a hearing for the determination of the amount of restitution owed.

The probation department filed an Application and Order for Juvenile Restitution, recommending the juvenile court set restitution in the amount of $7,530.97 payable to the victim, which included $5,673.00 for repairs to the roof hatch, $1,500.97 for re-keying the clubhouse, $350 for vodka, $3.00 for one bottle of Gatorade, and $4.00 for two snack cookie bags.  The probation officer noted that the former security director for the victim emailed a police officer "an itemization of their crime-related loss."  The probation officer also noted that the executive assistant of the Desert Princess Palm Springs Homeowners Association verified with the general manager that the roof hatch in the clubhouse was damaged and required replacement.  The probation department attached a copy of the written proposal for the work to be done by the roofing company to replace the roof hatch.  The probation department recommended that liability be joint and several with minor's co-participant.  The probation department additionally sent minor and his parents a letter notifying them of the restitution amount being recommended and telling them they were entitled to a hearing if they disputed the amount, but they would have the burden of proving the determined loss amounts were inaccurate.

---

[2]  We observe that different parts of the record refer to the victim as the Desert Princess Clubhouse, the Desert Princess, and the Desert Princess Golf Club.  This opinion will refer to the Desert Princess Golf Club as the victim and the club house as the victim's property that was damaged.

On July 2, 2024, minor requested a contested restitution hearing, which the court granted.

On January 28, 2025, the court held a contested restitution determination hearing. At the outset, it noted that the parties had agreed there would be no dispute as to the amount sought for the re-keying of the victim's clubhouse, which was $1,522.43. The court further noted there had been recent changes to the law (§ 730.6, subd. (b)(3)), and it would accordingly need to assess each minor participant's percentage of responsibility for the economic losses, as there were two offenders in this case.

The prosecutor called as a witness J.Y., who was employed by the victim as the Director of Golf at the time of the incident, and now as the Club Manager. As to the robbery and vandalism that occurred on February 25, 2023 (the incident), he testified that there was damage to the roof hatch as a result of the incident. J.Y. said that "they" (minor and his cohort) came through the roof hatch and damaged it. J.Y. said he never personally used the roof hatch or directed anyone to use it prior to the incident, but he knew it was used by mechanics and the clubhouse maintenance staff to service the air conditioners. He testified that after the incident, the staff was not able to lock the roof hatch, "so it had to be replaced and re-setup so that it could be secured at night or secured all the time." J.Y. testified that the roof hatch was replaced at an approximate cost of $5,000.

On cross-examination, J.Y. confirmed that people had broken into the clubhouse through the roof hatch one time prior to February 25, 2023, but no one was caught. He stated that "they left personal notes in people's lockers, so we know it's the same people."

J.Y. added that "there wasn't damage the first time. The roof wasn't -- the roof might have been damaged, but there wasn't anything taken inside except for one locker, the lock was cut off and a note left inside the locker." Defense counsel sought to clarify that the hatch was entered prior to the date of the incident and that J.Y. did not know the condition of the hatch before that date. J.Y. said, "I know it was lockable. And afterwards, we had to go up and wire it shut to keep it locked." Defense counsel asked how he knew the roof hatch did not lock if he did not know the condition of the hatch. J.Y. explained that, even though he did not personally lock or unlock it, he knew "the staff would have fixed it, had it not been lockable."

The court addressed J.Y. directly and asked whether the lock on the old roof hatch was broken, and he replied, "I believe it was broken in the process of the break-in, but I cannot confirm that." The court asked whether the new roof hatch that was installed was "now fully lockable," and J.Y. confirmed that it was.

The court asked counsel if there was any information from the police reports regarding minor's conduct during the incident. The prosecution stated the police officers reported that they reviewed surveillance video and saw seven minor suspects, and they recognized minor from prior encounters. They saw him rip the screen from the cafeteria window, but when the minors realized they could not enter through the window, they walked along the side of the building until they were out of the camera's view. One of the minors moved the camera so they could not be seen until they were actually inside the clubhouse. The officers recognized minor as the first one inside the cafeteria and saw him grab some items from a basket. The prosecutor argued that, even though there was

5

no surveillance video showing minor as the one who broke through the hatch, minor was the one who took the most initiative. He went to the cafeteria window first to try and break in, and when that was not successful, he and the others went to the roof. Thus, the prosecutor argued that the court should find minor 60 percent liable and the other participants 40 percent liable.

Minor's counsel argued that, whether or not minor and his cohorts broke the roof hatch to enter was questionable since the maintenance head was not there to testify regarding the condition of the hatch prior to and after the incident. Minor's counsel also contended that J.Y.'s testimony was "highly conflicted" and J.Y. had no idea what the condition of the roof hatch was prior to the incident. Minor's counsel argued it had not been proven that the minors caused the damage that necessitated the roof repair.

After the prosecutor and defense counsel discussed J.Y.'s testimony, the court stated: "I heard his testimony . . . that the hatch was lockable before the incident, and after the incident it was broken and they replaced it with a lockable mechanism. So before the incident it was lockable, and it was damaged due to the incident. And afterwards they had to replace the roof hatch with a locking mechanism. So it was not damaged the first time."

Defense counsel reiterated that "none of this is based on [J.Y.'s] personal knowledge," and the court replied with: "[T]here has been an invoice[3] submitted

---

[3] We note that, although the court repeatedly referred to the documentation as an invoice, it was actually a work proposal.

regarding the repair, and I think that that suffices on the preponderance of the evidence standard regarding the repair of the roof and the condition."

Defense counsel next disputed the documentation of the roof hatch repair, arguing that it lacked itemization of material and labor to prove the actual repair cost. She further questioned the condition of the damaged hatch and suggested that a complete hatch replacement might not have been necessary if the lock alone could have been replaced. The court reminded defense counsel that, once the invoice was submitted, the burden shifted to minor to present contrary evidence. The court then asked defense counsel's opinion about the apportionment of liability, and she argued there were seven individuals involved and four were named, so perhaps 40 percent for minor and 20 percent for each of the others. The prosecutor clarified that although there were seven suspects, only two were formally charged. The court then stated that, under the recently enacted law, it had to apportion restitution and each minor had to be held severally liable, rather than jointly and severally. The court stated it believed the minors had damaged the roof hatch and noted the invoice submitted by the victim was for $5673. The court conceded that the invoice was not "terribly specific" but noted it described the type of work the contractors were doing and the scope of the work. The court found the invoice sufficient, under the preponderance of the evidence standard. Over defense counsel's objection, the court ordered minor severally liable for 50 percent of the re-keying cost ($761.22) and 50 percent of the roof hatch repair ($2836.50) for a total of $3,597.72 in restitution. The court ordered no victim restitution for the vodka, Gatorade, or cookies.

On February 13, 2025, the court found that minor successfully completed his DEJ, dismissed the petitions, converted the restitution order to a civil judgment, and ordered his juvenile records sealed.

## DISCUSSION

*The Juvenile Court Properly Awarded Restitution for the Damage to the Roof Hatch*

Minor argues the restitution order must be reversed because it is not supported by substantial evidence. Specifically, he contends the evidence did not show his actual conduct caused the damage to the roof hatch. Minor also argues the evidence was legally insufficient to prove the amount for the roof hatch repairs. We conclude the court properly ordered minor to pay restitution for the damaged roof hatch.

A. *Relevant Law*

"Section 730.6 governs restitution in cases where a minor is adjudicated a ward of the court pursuant to section 602. In pertinent part, that statute provides: '(a)(1) It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any *economic loss* as a result of the minor's conduct shall receive restitution directly from that minor. [¶] (2) [T]he court shall order the minor to pay, in addition to any other penalty provided or imposed under the law, . . . the following: [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (h).' In relevant part, section 730.6, subdivision (h) provides: 'A restitution order pursuant to subparagraph (B) of paragraph (2) of subdivision (a), to the extent possible, shall identify . . . the amount of each victim's loss to which it pertains, and shall be of a dollar amount sufficient to fully reimburse the

8

victim or victims for all determined *economic losses* incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following: [¶] (1) Full or partial payment of the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible.'" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1131-1132 (*Johnny M.*).)

"[W]e observe that section 730.6 parallels Penal Code section 1202.4, which governs adult restitution." (*Johnny M.*, *supra*, 100 Cal.App.4th at p. 1132, fn omitted.) We also note that "[a] minor granted deferred entry of judgment 'may . . . be required to pay restitution to the victim or victims pursuant to the provisions of' the Welfare and Institutions Code." (*In re J.G.* (2019) 6 Cal.5th 867, 873; § 794.) Further, "[a] victim's restitution right is to be broadly and liberally construed." (*People v. Mearns* (2002) 97 Cal.App.4th 493, 500.)

"A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious. [Citation.] No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. '"[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt."' [Citation.] Section 1202.4 does not, by its terms, require any particular kind of proof. However, the trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a property owner's statement made in the probation report about the value of stolen or damaged property. [Citation.] Once the victim makes a prima facie showing of economic losses incurred as a result of

9

the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. [Citation.] The defendant has the burden of rebutting the victim's statement of losses, and to do so, may submit evidence to prove the amount claimed exceeds the repair or replacement cost of damaged or stolen property." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543 (*Gemelli*); see *People v. Superior Court* (*Lauren M.*) (2011) 196 Cal.App.4th 1221, 1226.)

Although a restitution order may be challenged on the ground that no substantial evidence supports the order, "[i]n reviewing the sufficiency of the evidence, the '"power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citation.] . . . If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469 (*Baker*).)

B. *There Was Substantial Evidence to Support the Court's Finding That Minor's Conduct Caused Damage to the Roof Hatch*

Minor contends the court abused its discretion in awarding restitution for the roof hatch because there was insufficient evidence to show his conduct caused the damage to it. He specifically contends J.Y.'s testimony lacked credibility since J.Y. did not have personal knowledge of the condition of the roof hatch prior to the incident, and he

assumed it was damaged on the day of the incident "because he inferred that the staff would have fixed the roof if it had not been lockable." Minor further asserts there was no surveillance footage of him entering through the roof hatch or damaging it, and there was no evidence he had tools during the break-in.

Here, J.Y. testified that minor and his companion came through the roof hatch and damaged it. Although J.Y. had never personally "tested the condition" of the roof hatch, he testified that he knew it was "lockable" before the incident, but after the incident, the staff was not able to lock it and had "to go up and wire it shut to keep it locked." He further said that the roof hatch then "had to be replaced and re-setup so that it could be secured at night, or secured all the time." When asked how he knew the roof hatch could be locked before the incident, J.Y. said he knew "the staff would have fixed it, had it not been lockable." In light of this evidence, it was reasonable for the court to infer that the maintenance staff checked the roof hatch before the incident, that the roof hatch was able to be locked before the incident, that minor broke into the clubhouse through the roof hatch, and after that, the roof hatch did not lock anymore and had to be replaced. Minor argues that the prosecution failed to prove his conduct caused the damage to the roof hatch since the evidence was insufficient to establish it was damaged on the day of the incident, rather than during the prior break-in; however, we observe there was no evidence that the roof hatch was damaged prior to the incident.

As to minor's assertion that there was no surveillance footage of him entering through the roof hatch or damaging it and no evidence he had tools, we note that the victim restitution statute "does not, by its terms, require any particular kind of proof."

11

(*Gemelli, supra*, 161 Cal.App.4th at p. 1543; see § 730.6.; *People v. Lehman* (2016) 247 Cal.App.4th 795, 803 ["[t]he prosecution was not required to present victim testimony or affidavits or expert declarations in connection with the restitution hearing"].) We note that on his probation form, minor specifically agreed to pay restitution to the clubhouse in an amount to be determined by the probation department. Further, at no point during the restitution hearing did minor present any evidence that he did not break into the clubhouse or enter through the roof hatch to rebut the victim's statement of damages. "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt." (*Baker*, *supra*, 126 Cal.App.4th at p. 469.)

Under the preponderance of the evidence standard, we conclude the circumstances reasonably justified the court's finding that the roof hatch was damaged as a result of minor's conduct. (*Baker*, *supra*, 126 Cal.App.4th at p. 469 ["'If the circumstances reasonably justify the [trial court's] findings,'" the judgment may not be overturned when the circumstances might also reasonably support a contrary finding."].)

C. *The Court Did Not Abuse its Discretion in Ordering Minor to Pay for the Roof Hatch*

Minor argues that the evidence was legally insufficient to prove the amount of the roof hatch repairs. He specifically points out that no evidence was presented to "describe the issues with the existing roof hatch, the damage it incurred as a result of the break-in and why it was not lockable" or to prove that it had to be replaced rather than just being fixed. Thus, minor contends the court abused its discretion in finding the evidence sufficient to prove the amount in victim restitution to be paid for the roof hatch. We see no abuse of discretion.

12

The court may accept as prima facie evidence of loss a property owner's statement made in the probation report about the value of damaged property. (*Gemelli*, *supra*, 151 Cal.App.4th at p. 1543.) Furthermore, "the probation report gives notice to the defendant of the recommended amount of restitution, and the hearing offers him the opportunity to rebut the amount before the court determines the amount." (*People v. Foster* (1993) 14 Cal.App.4th 939, 946, superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238-245.) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. [Citation.] The defendant has the burden of rebutting the victim's statement of losses, and to do so, may submit evidence to prove the amount claimed exceeds the repair or replacement cost of damaged or stolen property." (*Gemelli*, *supra*, 151 Cal.App.4th at p. 1543.)

The trial court's restitution order here was based on the probation officer's application of victim restitution and report of crime-related losses incurred by the victim (the probation officer's report), which included a copy of the work proposal by the roofing company to replace the roof hatch. The proposal stated the scope of the work, which included removing and disposing of the existing roof hatch, installing a new roof hatch, and "[prim[ing] [the] roof deck with 450 black primer." It also described the application of polyurethane foam and coating in detail, as well as the general terms and conditions to be followed. The total cost for the work was $5,673. This evidence was sufficient to support the victim's restitution claim. (See *Gemelli*, *supra*, 161 Cal.App.4th

13

at p. 1543.)  We note that the court apportioned minor 50 percent liability and only ordered him to pay $2836.50 for the roof hatch.

Further, the probation department expressly advised minor that, if he disputed the recommended amount of restitution, he had the burden of proving the amount was inaccurate.  (See *Gemelli*, *supra*, 161 Cal.App.4th at p. 1543.)  At the contested restitution hearing, the court reiterated that the burden had shifted to minor to disprove the amount of loss claimed by the victim.  Minor's counsel responded that she attempted to obtain documentation to dispute it, but she did not actually offer any evidence.  Instead, counsel merely argued that it was "not a matter of whether the minor needs to pay, it's a matter of what he needs to pay and not to allow upgrades or excess work that doesn't need to be done."  Minor's counsel acknowledged that she received notice of the cost of the repair but just complained that she did not receive any information on "why that amount is necessary."  Thus, minor failed to rebut the victim's statement of loss by submitting evidence to prove the amount claimed exceeded the repair or replacement cost of the damaged property.  (*Ibid*.; see  *Gemelli*, *supra*, 161 Cal.App.4th at p. 1545 ["If defendant believed supporting documentation or additional information was necessary to effectively rebut the amount claimed, it was up to her to obtain it.  Having failed to do so, she did not meet her burden of proof."].)

In sum, the probation officer's report and the attached documentation were sufficient to establish a prima facie showing of the victim's loss.  The probation department adequately advised minor of the replacement cost of the roof hatch, and he did not effectively rebut the amount claimed.  We therefore conclude the court did not

abuse its discretion in ordering minor to pay $2,836.50 to the victim for the roof hatch. (*People v. Phu* (2009) 179 Cal.App.4th 280, 284 ["When there is a factual and rational basis for the amount of restitution ordered, no abuse of discretion will be found."])

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
                                                                    J.

We concur:

RAMIREZ
                    P. J.
McKINSTER
                    J.

15